**In re Daniel ELLSBERG, Petitioner.**

**Misc. No. 500.**

United States Court of Appeals, First Circuit.

Submitted Aug. 5, 1971.

Decided Aug. 10, 1971.

Leonard B. Boudin and Charles R. Nesson, Cambridge, Mass., for petitioner.

Lawrence P. Cohen, Asst. U. S. Atty., for United States.

Before ALDRICH, Chief Judge, and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

Defendant, a resident within this Circuit, was indicted by a grand jury of the Central District of California on June 28, 1971, for violation of 18 U.S.C. §§ 793(e) and 641. On the same day he delivered himself for arrest in Boston.[1] Hearing on the question of defendant's removal to California was held before a U. S. Magistrate on July 15. Since the identity of the defendant and the propriety of venue were removed from controversy by stipulation, the only issue before the magistrate was defendant's motion to compel the government to disclose whether it had intercepted any communication of defendant up to the time of the indictment through wiretapping or other means. The motion also sought a hearing to determine whether any such wiretapping was unlawful and whether the indictment and other removal documents were the products of any unlawful wiretapping. If so, the motion prayed that defendant be discharged from custody. The government refused to answer, taking the position that its duty to respond does not arise until a later stage in the prosecution.

The magistrate issued an opinion in which he concluded that the recent legislation relied on by defendant did not change pre-existing law limiting inquiry in removal proceedings and barring a collateral attack on an indictment and denied the motion. The district judge in substance adopted the findings and conclusions of the magistrate and issued a warrant of removal. Defendant has not appealed from this order, which is non-appealable, but has appealed from the district court's refusal to grant mandamus against the magistrate, and has also petitioned this court for a writ of mandamus, which we have permitted to be filed, directing the judge and magistrate in effect to grant defendant's earlier motion seeking disclosure of any wiretapping and adjudication of its legitimacy together with the effect of any unauthorized interception on the documents supporting defendant's removal.

Our first problem is to decide whether or not we have jurisdiction under the All Writs Statute, 28 U.S.C. § 1651, to issue a writ of mandamus. This statute limits our power to issue extraordinary writs to those "necessary or appropriate in aid of" our jurisdiction. Historically, one of the major predicates for mandamus has been the existence of appellate jurisdiction. Indeed, the most recent Supreme Court construction of the Act affirms that a court of appeals may issue a writ of mandamus only "in aid of an exercise of the Court of Appeals' appellate jurisdiction." Will v. United States, 389 U.S. 90, 95 n. 4, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). This court has given what petitioner fairly characterizes as a broad interpretation to "appellate jurisdiction" in In re United States, 348 F.2d 624 (1st Cir. 1965). There we held that this jurisdictional requirement was satisfied if the court had "potential jurisdiction" on appeal in a collateral proceeding.

---

1. While the warrant of arrest was issued prior to indictment on the basis of a complaint charging only violation of 18 U.S.C. § 793(e), defendant informed the government in essence that he was willing to treat the warrant as if it had been obtained after indictment.

Here, however, there is no question but that direct appeal does not lie from a removal order from one federal district to another. Galloway v. United States, 302 F.2d 457 (10th Cir. 1962). Moreover, Congress has specifically changed prior law to proscribe our appellate jurisdiction over district court actions in granting or refusing writs of habeas corpus to test the legality of removal proceedings or detention prior to removal. 28 U.S.C. § 2253. It is clear that if defendant had sought habeas relief, on the same grounds as those here alleged to support mandamus, we would not be able to review the action of the district court, even though it might have been in egregious error.

Petitioner seeks to establish the existence of potential appellate jurisdiction by treating mandamus itself as a collateral proceeding. Thus, the argument runs, petitioner could (and in fact did) seek a writ of mandamus from the district court under 28 U.S.C. § 1361. Since the grant or denial of such a writ by a district court is appealable, *see, e. g.,* Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965), even though a removal order per se is not appealable, this court allegedly has appellate jurisdiction over the removal proceeding. This argument stretches beyond elasticity the sense of "potential jurisdiction" in that it would convert any non-appealable order into an appealable one by annexing a prayer for mandamus relief. It is particularly unpersuasive here, since Congress has specifically proscribed review of the grant or denial of habeas corpus relief. *Cf.* Merino v. Hocke, 289 F.2d 636, 639 (9th Cir. 1961).

Another alleged source of jurisdiction is a commonly employed end run around the "in aid of appellate jurisdiction" requirement. It grounds jurisdiction in this court's supervisory control over the district courts. In LaBuy v. Howes Leather Co., 352 U.S. 249, 259–260, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) and Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), the Supreme Court expressly based jurisdiction on this supervisory power. Particularly as to this supervisory jurisdiction, however, it is exceedingly difficult to separate the question of jurisdiction from the substantive standards for issuance of a mandamus. What seems really involved is the sound discretion of this court to exercise its power of supervisory mandamus only in extraordinary circumstances.

The case law provides some help in giving contour to "extraordinary circumstances". One category of cases involves a "clear abuse of discretion". But that is not involved in the present case, since the district court is charged with having made a mistake of law as to the proper meaning of the words "hearing" and "evidence". This case seems to fit the language of Parr v. United States, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L. Ed. 1377 (1956): "Here, the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction." Similar language is found in Will v. United States, *supra*, 389 U.S. at 103–104, 88 S.Ct. 269.

A second category of cases where mandamus has been deemed appropriate concerns those in which the writ has been used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Assn., 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), quoted with approval in Will v. United States, *supra*, 389 U.S. at 95, 88 S.Ct. 269. But this category of supervisory mandamus is inapposite here because the district court heard and adjudicated the motion for removal as required by Rule 40.

Arguably, however, this case falls within the final category of supervisory writs of mandamus, those raising important issues of first impression. Schlagenhauf v. Holder, *supra*, 379 U.S. at 110, 85 S.Ct. 234. That case differed from the present case in that there the court of appeals would have retained jurisdiction over the litigation and thus continuing supervisory power regardless

of the grant or denial of the mandamus petition; where as if we do not grant mandamus relief, the present litigation will pass from our jurisdiction to that of the court of appeals whose jurisdiction includes the court in which the indictment was issued. While we thus have the most serious doubt as to our jurisdiction, we need not resolve this issue since we conclude that on the merits petitioner is not entitled to mandamus relief.

Defendant's attack on his removal involves two longstanding legal principles. The first is the historic limitations on challenges to removal. While courts must deny removal if an examination of the indictment fails to reveal that a crime against the United States has been charged, that the court to which the accused is sought to be removed has jurisdiction, or that the defendant is the individual named in the charge, Tinsley v. Treat, 205 U.S. 20, 29, 31, 27 S.Ct. 430, 51 L.Ed. 689 (1907), they have not carried their inquiry beyond the face of the indictment. United States v. Winston, 267 F.Supp. 555, 560–561 (S.D.N.Y. 1967).

The second hurdle faced by defendant is the historic bar against a judge's review, at a defendant's behest, of grand jury action. United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1965); Lawn v. United States, 355 U.S. 339, 349–350, 78 S.Ct. 311, 2 L.Ed. 2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Defendant makes clear that

he is not presently seeking to quash the indictment as an *accusation* but only as *evidence* in the removal proceeding. Rule 40(b) (3) of the Federal Rules of Criminal Procedure has, however, strengthened the historic bar in the context of removal proceedings. The rule provides, "If the prosecution is by indictment, a warrant of removal shall issue upon the production of a certified copy of the indictment and upon proof that the defendant is the person named in the indictment." The Notes of the Advisory Committee on Rules explain that while proof of probable cause must be adduced if the demand for removal is based on an information or complaint, "the indictment will be conclusive proof of probable cause * * * [since] the grand jury, which is an arm of the court, has already found probable cause. Since the action of the grand jury is not subject to review by a district judge in the district in which the grand jury sits, it seems illogical to permit such review collaterally in a removal proceeding by a judge in another district."

Defendant argues that these traditional limitations on a removal proceeding court must yield to recent provisions in the Omnibus Crime Control and Safe Streets Act, Title III; 18 U.S.C. §§ 2510–2520 (1968), and in the Organized Crime Control Act of 1970, Title VII, Part B; 18 U.S.C. § 3504 (1970). Specifically, defendant relies on 18 U.S.C. §§ 2515, 2518(10) (a), and 3504(a)[2]. His argument is the following: (1) Section

2. The relevant provisions are as follows:
"§ 2515. Prohibition of use as evidence of intercepted wire or oral communications
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

"§ 2518(10) (a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, * * *"
"§ 3504. Litigation concerning sources of evidence
(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

2515 proscribes the reception of any unauthorized wiretap evidence by a grand jury; (2) Section 2518(10) (a) allows any aggrieved person in any proceeding to move to suppress the contents of any illegally intercepted communication or evidence derived therefrom; (3) Section 3504(a) requires the government, in any proceeding where claim is made that evidence is inadmissible because it is the product of an illegal wiretap, to affirm or deny the occurrence of an unlawful act; (4) a removal proceeding is a "proceeding"; and (5) both the arrest warrant and the indictment are "evidence" in a removal proceeding. Therefore, concludes defendant, the government must answer and indeed must demonstrate that the indictment was not the product of unauthorized acts before removal is ordered.

We begin by noting that neither in the motion addressed to the magistrate nor in the petition for mandamus addressed to us is there a "claim that evidence is inadmissible". Defendant merely asks a question whether or not any communication was intercepted. Strictly speaking, defendant, in his moving papers, does not come within the language of the statutes he invokes. However, he does in his brief allege the use of inadmissible evidence, and the government and the district court have treated the request as a claim. Without any intent to rule that a request for information can be equated with a claim of inadmissibility, we address defendant's interpretation of the new statutes.

Defendant recognizes the prior legal traditions we have referred to. He also acknowledges the absence of any legislative history in the 1968 and 1970 Acts bearing on removal proceedings. And he concedes that the type of inquiry and hearing on the legality and effect of wiretapping would, if applicable to a removal proceeding, apply equally to such other pre-trial proceedings as a probable cause hearing or a bail hearing. But he asserts that the new statutes are clear and unequivocal and mandate the result he seeks.

We do not so read the statutes. While we acknowledge the generic sweep of the word "proceeding", the scheme and purpose of the pertinent provisions of the Safe Streets Act seem to us inconsistent with defendant's position. 18 U.S.C. § 2518(9) requires the government at least ten days before "any trial, hearing, or other proceeding", in which contents of intercepted communications are to be offered in evidence, to furnish each party a copy of the authorization for the interception. The Senate Report accompanying the legislation [3] states:

" 'Proceeding' is intended to include all adversary type hearings. It would include a trial itself, a probation revocation proceeding, or a hearing on a motion for reduction of sentence. It would not include a grand jury hearing. Compare Blue v. United States, [United States v. Blue] 86 S.Ct. 1416, 384 U.S. 251 [16 L.Ed.2d 510] (1966). The 10-day period is designed to give the party an opportunity to make a

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;

(2) disclosure of information for a determination if evidence is inadmissible because it is the primary product of an unlawful act occurring prior to June 19, 1968, or because it was obtained by the exploitation of an unlawful act oc-

curring prior to June 19, 1968, shall not be required unless such information may be relevant to a pending claim of such inadmissibility; and

(3) no claim shall be considered that evidence of an event is inadmissible on the ground that such evidence was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, if such event occurred more than five years after such allegedly unlawful act."

3. S.Rep.No.1097, 90th Cong., 2d Sess. (1968), 1968 U.S.Code Cong. and Ad. News, p. 2195.

pretrial motion to suppress under paragraph (10) (a), discussed below. Compare Segurola v. United States, 48 S.Ct. 77, 275 U.S. 106 [72 L.Ed. 186] (1927)."

As to § 2518(10) (a), the Report states:
"It provides the remedy for the right created by section 2515. Because no person is a party as such to a grand jury proceeding, the provision does not envision the making of a motion to suppress in the context of such a proceeding itself. Normally, there is no limitation on the character of evidence that may be presented to a grand jury, which is enforcible by an individual. (Blue v. United States [United States v. Blue], 86 S.Ct. 1416, 384 U.S. 251 [16 L.Ed.2d 510] (1965 [*sic*].)." *Id.*

The Report adds that a defendant's motion should be made before trial and that "Care must be exercised to avoid having a defendant defeat the right of appeal [given in § 2518(10) (b) to the government within 30 days after an order of suppression] * * * by waiting until trial." *Id.*

Both the statutory language and this legislative history lead us to make several observations. First, we note that the specific instances of adversary hearings given for illustration were, in addition to trials, post-trial proceedings. Second, § 2518(9) sets the time schedule for governmental revelation of wiretapping—at least ten days before an applicable proceeding. Third, the purpose of the notice is to trigger the remedy, a pre-trial motion to suppress evidence. Fourth, the government has the right of timely appeal from a suppression order. And finally, we note the intent of Congress not to change the historic bar against a defendant's impeaching a grand jury indictment.[4]

Here defendant seeks not to suppress tainted interceptions but the indictment itself. While, if he were in California, he would have no basis at this juncture to attack the indictment as based on tainted evidence, he seeks to accomplish the same end in an ancillary proceeding. In short, the rights of a defendant are in effect asserted to be greater if he is outside the accusing jurisdiction than as if he were within it. Leaving aside this anomaly, it is apparent to us that the Congress intended one remedy—the suppression of tainted interceptions—not the additional and more all-embracing remedy of defeating removal, and thus prosecution. Moreover, it seems highly unlikely that the Congress, in providing a 30-day appeal for the government from a suppression order, could have intended full scale hearings and appeals in the removal court, particularly in the light of its long standing bar to habeas corpus appeals in 28 U.S.C. § 2253.

Nor is defendant helped by the 1970 legislation in 18 U.S.C. § 3504 (a). Whether or not a removal proceeding is a "proceeding" under § 2518 (10) (a), it seems to us that "evidence" as used in § 3504(a) does not so clearly refer to an indictment as used in a re-

4. Two recent cases relied upon by defendant, In re Joques Egan, No. 71–1088 (3d. Cir., filed May 28, 1971), and In re Carol Evans, No. 71–1499 (D.C. Cir., filed July 23, 1971), held, with dissenting opinions, that a non-defendant grand jury witness could rely on section 2515 (*Egan*) and also 2518(10) (a) (*Evans*) to supply standing to challenge an order compelling response to questions in a grand jury proceeding. But each recognized the inviolability of an indictment from motions to quash or suppress by a defendant, the court in *Egan* saying, "The reference in the legislative history to *Blue* demonstrates at most a congressional intent to preclude an attack on a grand jury investigation by

* * * a defendant, and instead require such person to move for the exclusion of the questionable evidence after the indictment or at a time designated by the rules of criminal procedure", slip opinion at 12. *See also Evans*, slip opinion at 14.

While, of course, ultimate suppression of tainted evidence will not compensate for hardships occasioned by any illegal wiretapping, defendant will have an action for civil damages, both actual damages to total not less than $1000 and punitive damages, in the event that the government has engaged in unauthorized interception. 18 U.S.C. § 2520.

moval proceeding as to preclude our adherence to the traditional restraints on removal courts. In the first place, Rule 40(b)(3) is a procedural requirement, removed from judicial discretion, that a warrant of removal shall issue, once identity of a defendant is ascertained, upon production of a certified copy of an indictment. To say, under these circumstances, as does defendant, that an indictment is "evidence" because it is "conclusive evidence" is to confuse a mandatory rule with a fact-finding process. The fact that the magistrate referred to the copy of the indictment as being admitted into evidence cannot alter its character. Secondly, as the House Report on the Organized Crime Control Act states:[5] "Section 3504(a) establishes procedures for the disposition of claims based upon allegations that evidence is the primary product of an unlawful act or has been derived from the 'exploration' of an unlawful act." Were an indictment in a removal proceeding to be considered such evidence, Congress would have, without discussion, subjected indictments against non-resident defendants to the kind of direct attack so long barred by *Blue, supra,* and similar cases.

Finally, section 3504(a) by its own words indicates what is contemplated by the word "evidence". In § 3504(a)(3) the reference, obviously consistent with earlier, more general references to "evidence", is to "evidence of an event". To look upon an indictment as "evidence of an event" when the event is the indictment itself is beyond our lexicon.

We have not treated separately defendant's argument that the warrant of arrest was invalid. While the arrest warrant was issued prior to the indictment, defendant stipulated that the warrant could be treated as having been issued subsequent to the indictment and based upon the indictment. Since we have concluded that the indictment is not evidence, we conclude that the warrant based upon the indictment, a fortiori, is not. Since defendant admitted his identity, the removal court had no choice but to issue the removal order on presentation of a certified copy of the indictment and a copy of the arrest warrant.

The petition for mandamus is denied.

---

5. H.Rep.No.1549, 91st Cong., 2d Sess. (1970), 1970 U.S.Code Cong. and Ad.News, p. 4027.