UNITED STATES of America, Appellee,

v.

William C. SORREN, Defendant,
Appellant.

Misc. No. 79–8089.

United States Court of Appeals,
First Circuit.

Submitted Aug. 29, 1979.

Decided Sept. 4, 1979.

Harvey B. Nachman and Carlos V. Garcia Gutierrez, Santurce, P. R., on memorandum for appellant.

Julio Morales Sanchez, U. S. Atty., and Justo Arenas, Fernandez, Asst. U. S. Atty.,

San Juan, P. R., on memorandum for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge.

COFFIN, Chief Judge.

On May 23, 1979, appellant, William Sorren, was indicted in the United States District Court for the District of Puerto Rico on charges of conspiracy to import cocaine into customs territory of the United States in violation of 21 U.S.C. §§ 952, 963, and 843(b). Prior to commencement of his trial, Sorren filed, inter alia, motions requesting: (1) that he be granted discovery from the prosecution of information pertaining to United States involvement in his arrest and confinement in Panama, his expulsion therefrom, and his transportation to Puerto Rico; (2) that the district court hold an evidentiary hearing into the circumstances surrounding these events; and (3) that the district court "divest itself of jurisdiction" over his person. The district judge denied all three motions on July 31, 1979, and Sorren has taken appeal from this order.[1]

Except for the extent of the United States' participation in Sorren's arrest and confinement in Panama and his transportation to Puerto Rico, the parties do not significantly differ over the events leading to Sorren's arrest in Puerto Rico by officers of the Drug Enforcement Administration (DEA). Sorren, along with two others, was taken into custody on May 8, 1979, in Panama City, Republic of Panama. He was subsequently detained first in the headquarters of the G–2 Division of the Panama National Guard,[2] and then in the Panama Penitentiary. After being expelled from Panama by the Panamanian government, Sorren was flown to Puerto Rico via Cara-

---

1. After filing notice of appeal, Sorren moved that the trial court stay the proceedings pending this court's determination of jurisdiction to hear this appeal. The district court denied this motion, and Sorren filed a petition for a writ of prohibition or other writ authorized by 28 U.S.C. § 1651 requesting this court to stay the proceedings pending this appeal. On August

13, 1979, we entered an order staying the proceedings below pending further order of this court.

2. DEA agent Felix Jimenez so testified at the district court hearing on Sorren's motions. Sorren, in his affidavit, stated that it "appeared to be a Panamanian Police Station."

cas, Venezuela, accompanied by agents of the DEA. Sorren was met in Caracas by a DEA agent and officers of the Venezuelan Politica Tactica Judicial (PTJ) and was held in the PTJ Detention Center while awaiting his flight to Puerto Rico. Upon Sorren's arrival in Puerto Rico, agents of the DEA placed him under arrest.

Sorren alleges that his arrest in Panama was in fact an illegal abduction and that his treatment and the conditions of his confinement in Panama and Venezuela constituted physical and psychological torture. This mistreatment, he asserts, was "engineered, directed, paid for and provoked" by the DEA. Sorren argues that by this involvement the United States has deprived him of his rights protected under the Fourth and Fifth Amendments and therefore that the district court was required to divest itself of jurisdiction. Alternatively, he argues that the district court should have granted him discovery to more fully develop the factual basis for his claim.

### 1. *Appealability*

■ The right of appeal in criminal cases "is purely a creature of statute", *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977), and the applicable statute in this case, 28 U.S.C. § 1291, limits the appellate jurisdiction of this court to appeals taken from "final decisions" of the district courts. This requirement of finality is particularly strict in criminal proceedings because the disruption and delay caused by interlocutory appeals "are especially inimical to the effective and fair administration of the criminal law." *Abney, supra*, 431 U.S. at 657, 97 S.Ct. at 2039 (quoting *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962)); *see Cobbledick v. United States*, 309 U.S. 323, 324–26, 60 S.Ct. 540, 84 L.Ed. 783 (1940). The district court's denial of Sorren's motions are, in one sense, not final decisions since they do not terminate or otherwise dispose of the instant litigation. *See Atlantic Fishermen's Union v. United States*, 197 F.2d 519 (1st Cir. 1952) (denial of motion to dismiss criminal prosecution for lack of subject matter jurisdiction is interlocutory order); *Sheehan v. Doyle*, 513 F.2d 895, 898 (1st Cir. 1975) (discovery order is not "final" decision); *cf. DiBella v. United States, supra* (order denying motion to suppress evidence is not "final" decision).

■ Appellate review under section 1291 has not been limited to decisions that terminate the pending action, however. Under the "collateral order" exception to the finality rule, announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), certain orders may be appealed despite their interlocutory nature. Four requisites of appealability under this exception can be gleaned from the *Cohen* opinion and the cases applying it. The order must involve: (1) an issue essentially unrelated to the merits of the main dispute, capable of review without disrupting the main trial; (2) a complete resolution of the issue, not one that is "unfinished" or "inconclusive"; (3) a right incapable of vindication on appeal from final judgment; and (4) an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion. The Supreme Court has, on three occasions, found interlocutory appeals in criminal cases to be within the collateral order exception. *Helstoski v. Meanor*, —— U.S. ——, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (speech or debate clause immunity); *Abney v. United States, supra* (double jeopardy); *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (denial of bail). *But see United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (denial of motion to dismiss on speedy trial grounds not appealable). Sorren asserts that his appeal is indistinguishable from those approved in *Abney* and *Stack*. Our reading of the analysis employed by the Court in *Helstoski, Abney*, and *MacDonald* leads us to examine carefully the nature of the right Sorren seeks to protect in this appeal.

Although we can find no cases that directly address an interlocutory appeal from an unsuccessful challenge to personal jurisdiction in a criminal case, decisions denying appeals from other jurisdictional challenges

suggest that the individual litigant's interest in the limitations on the courts' jurisdiction is adequately served by postjudgment appeal.[3] *See, e. g., In re Durensky,* 519 F.2d 1024 (5th Cir. 1975) (subject matter jurisdiction in civil suit); *Atlantic Fishermen's Union v. United States, supra* (subject matter jurisdiction in criminal case); *Hydraulic Press Mfg. Co. v. Moore,* 185 F.2d 800 (8th Cir. 1950) (personal jurisdiction in civil suit). The language of opinions discussing jurisdictional challenges belies the argument that Sorren faces an irreparable loss of a right comparable to those held appealable in *Abney* and *Helstoski.* In the latter cases, the Court relied on the defendants' rights to be protected "against being twice put to *trial* for the same offense", *Abney, supra,* 431 U.S. at 661, 97 S.Ct. at 2041, and "not only from the consequences of litigation's results but also from the burden of defending themselves", *Helstoski, supra,* —— U.S. at ——, 99 S.Ct. at 2449 (quoting *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)). An interlocutory denial of a motion to dismiss a civil case for lack of jurisdiction, on the other hand, "is perhaps unique in its incapacity permanently to affect the rights of the moving party."[4] *In re Durensky, supra,* 519 F.2d at 1029. Furthermore, courts have not found that the "inconvenience" to a party of awaiting review of a jurisdictional question justifies permitting immediate review. *See Roche v. Evaporat-*

ed Milk Ass'n, 319 U.S. 21, 30–31, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); *Hydraulic Press Mfg. Co. v. Moore, supra,* 185 F.2d at 803. Nor does the fact that this case involves personal jurisdiction over a criminal defendant necessarily elevate this inconvenience to a basis for immediate appeal. *Cf. Cobbledick v. United States, supra,* 309 U.S. at 325, 60 S.Ct. at 541 ("Bearing the discomfiture and cost of a prosecution for crime . . . is one of the painful obligations of citizenship.").

■ We conclude that, unlike the interests protected by the double jeopardy or speech or debate provisions of the Constitution, the essence of a litigant's jurisdictional "right" is that the court not impose a *judgment* against him unless it has both personal and subject matter jurisdiction. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 18, 71 S.Ct. 534, 95 L.Ed. 702 (1950). The district court's denial of Sorren's motion to divest itself of jurisdiction thus fails to satisfy the *Cohen* requirement of a right incapable of vindication on appeal.

We reject as well any suggestion that broader policies implicated by the peculiar nature of Sorren's substantive claim mandate a different result. Were Sorren's "abduction" at least arguably in violation of a treaty with a foreign nation, foreign policy concerns might militate in favor of immediate appeal. But Sorren alleges no such

---

3. The leading case supporting Sorren's claim that the district court is without personal jurisdiction is the Second Circuit's decision in *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974). The court in *Toscanino* stated that particularly outrageous acts of United States officials in acquiring personal jurisdiction over a criminal defendant required the court to divest itself of jurisdiction, and remanded the case to the district court for an evidentiary hearing on the question. The court characterized its conclusion as an "extension" of the practice of federal courts in civil cases to decline jurisdiction over a defendant whose presence is secured by fraud or force. *Id.* at 275. Our research discloses, however, that in neither the civil cases involving fraudulently obtained jurisdiction, nor the criminal cases involving challenges based on the *Toscanino* theory have courts entertained interlocutory appeals attacking the district court's jurisdiction.

4. The court in *In re Durensky, supra,* noted that a challenge to subject matter jurisdiction may be raised at any time during the trial. Although in this case Fed.R.Crim.P. 12(b)(2) required Sorren to challenge the court's jurisdiction prior to trial, his motion may be renewed at the close of the trial if new facts come to light supporting his claim. 8 Moore's Federal Practice ¶ 12.04, at 12–28 (1978). In this respect, the court's order can be regarded as tentative, since the district judge may reverse his decision after the facts are developed at trial. *See In re Durensky, supra,* 519 F.2d at 1029–30; *cf. United States v. MacDonald, supra* (facts relevant to speedy trial claim may be developed at trial).

violation. It might also be argued that the policy of preserving the integrity of the judicial system is ill-served by allowing the case to proceed against a defendant who may have been abducted and mistreated by United States officials. But the courts have been reluctant to recognize interests other than those of the appellant in determining the practicability of postjudgment review to protect those rights forming the basis of an appeal. *E. g., United States v. Washington*, 573 F.2d 1121 (9th Cir. 1978) (denial of motion to disqualify judge not appealable); *Baker v. United States Steel Corp.*, 492 F.2d 1074 (2d Cir. 1974); see Comment, 45 U.Chi.L.Rev. 450, 460 (1978); *cf. Stone v. Powell*, 428 U.S. 465, 485, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (taking a narrowly circumscribed view of the role of "judicial integrity" in applying the exclusionary rule).

■ The appealability of the other two issues raised by Sorren can be disposed of more promptly. Denials of requests for discovery may generally be appealed only after final judgment. *See Browning Debenture Holders' Committee v. DASA Corp.*, 524 F.2d 811 (2d Cir. 1975); *Sheehan v. Doyle, supra*; *Kimes v. United States*, 251 F.2d 458 (5th Cir. 1958). Although the discovery requested by Sorren might conceivably be deemed ancillary to his attack on the court's jurisdiction, our conclusion above renders this argument fruitless.

■ Sorren's argument that he was entitled to an evidentiary hearing fails to meet the requirements of the "importance" element of the *Cohen* test. The precedential basis for such a hearing is *United States v. Toscanino, supra*. But the remand in *Toscanino* explicitly granted the district court discretion to determine whether such an

evidentiary hearing was warranted. *Toscanino, supra*, 500 F.2d at 281. Assuming that this circuit were to adopt *Toscanino*, we would still have no jurisdiction to entertain an appeal from the district court's order on this issue since we would not be deciding a question of controlling law, but merely reviewing an exercise of the district judge's discretion that necessarily depended on the particular facts before him.

### 2. *Mandamus*

■ Our conclusion that Sorren may not appeal the interlocutory decisions of the district court does not exhaust the sources of our power of review. This court may, in its discretion, treat an attempted appeal from an unappealable order as a petition for a writ of mandamus or prohibition. *See United States v. Washington*, 573 F.2d 1121 (9th Cir. 1978). Under the traditional view of mandamus, the writ is available to confine the lower courts to the proper exercise of their jurisdiction. *See Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). Mandamus is not, however, a substitute for interlocutory appeal for parties attacking the court's jurisdiction: it is appropriate only when the lower court is clearly without jurisdiction and the party seeking the writ has no adequate remedy by appeal. *Ex Parte Chicago R. I. & Pac. Ry.*, 255 U.S. 273, 275, 41 S.Ct. 288, 65 L.Ed. 631 (1921). Sorren's jurisdictional claim fails to meet both of these requirements. As we concluded above, Sorren's jurisdictional "right" can be adequately vindicated on appeal by attacking a judgment against him. Moreover, we are far from satisfied that a "clear and indisputable" error has been made.[5] *See Will v. United States, supra.*

■ A second basis upon which we might issue a writ of mandamus in this

5. Assuming, *arguendo*, that this circuit were to adopt the *Toscanino* approach, the allegations and supporting affidavit of Sorren fail to present the level of conduct supporting such a jurisdictional dismissal in the cases following *Toscanino*. Under the so-called *Ker-Frisbie* doctrine, the forcible abduction of a criminal defendant into the court's jurisdiction does not impair the court's power to try him. *See Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1888); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct.

509, 96 L.Ed. 1344 (1952). In *United States v. Toscanino, supra*, the Second Circuit held that in light of Supreme Court decisions subsequent to *Ker* and *Frisbie*, due process requires a court to divest itself of jurisdiction over the person of a criminal defendant "where it has been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." *Id.*, 500 F.2d at 275. In *Toscanino*, the "unreasonable" invasion of his rights included beatings, denial

case, one relying on a more recent and sweeping interpretation of our mandamus power, is that the court below committed clear error in failing to hold an evidentiary hearing to further develop the facts relating to Sorren's "abduction". Several circuits, including this one, reading broadly the language of the Supreme Court's decision in *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), have endorsed the use of "advisory" and "supervisory" mandamus to settle new and important questions of law. *See In re Ellsberg*, 446 F.2d 954 (1st Cir. 1971); *United States v. U. S. District Court*, 444 F.2d 651 (6th Cir. 1971); *United States v. Hughes*, 413 F.2d 1244 (5th Cir. 1969); Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv.L.Rev. 595 (1973). In *Will v. United States, supra*, the Supreme Court noted the special hesitation that is appropriate before granting mandamus in a criminal proceeding: as with interlocutory appeal, there is a compelling policy militating against delay. We need not probe the limits of our "supervisory" or "advisory" mandamus powers in criminal cases, however, because the question before us fails to fall within the limits of even a broad reading of those powers. Invocation of our advisory mandamus power is not to be used as a bootstrap device to circumvent the limits on our jurisdiction to review discretionary interlocutory rulings of district judges. For mandamus to issue here, we would have to frame the writ in terms stating that a district judge, when faced with a *Toscanino*-type challenge to his jurisdiction, must hold an evidentiary hearing in all such cases. Neither *Toscanino, supra*, 500 F.2d at 281, *on remand*, 398 F.Supp. 916 (E.D.N.Y.1975) (court found facts did not warrant hearing), nor the cases following it have held that an evidentiary hearing is required in all cases. We decline to do so today.

*The appeal is dismissed and the stay of defendant's trial is dissolved.*

of sleep for prolonged periods, fluids injected in his eyes and nose, and electric shocks administered to his ears, toes, and genitals. Although the *Toscanino* court asserted that the *Ker-Frisbie* doctrine has been eroded by the Supreme Court's expanded notion of due process, the Supreme Court twice in the last four years has reaffirmed in dictum the vitality of the doctrine, *Stone v. Powell*, 428 U.S. 465, 485, 96 S.Ct. 3037 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and the courts applying *Toscanino* have treated it as an exception to *Ker-Frisbie* and construed it narrowly to apply to factual situations as egregious as those in *Toscanino, see, e. g., United States v. Lopez*, 542 F.2d 283 (5th Cir. 1976) (abduction at "instigation" of United States, but without direct United States involvement in torture, insufficient to divest court of jurisdiction); *United States v. Lara*, 539 F.2d 495 (5th Cir. 1976) (no *Toscanino* violation where defendant failed to show direct United States involvement in torture; forcible abduction without more insufficient); *United States v. Lira*, 515 F.2d 68 (2d Cir. 1975) (no *Toscanino* violation without showing direct United States involvement); *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975) (seizure of defendant not in violation of treaty or against wishes of foreign government and no showing of "shocking" conduct by United States agents made *Toscanino* inapplicable). Sorren admits that the Panamanian and Venezuelan governments were cooperating with the United States, and he provides no evidence of specific instances of acts of torture or other mistreatment inflicted on him by or at the direction of agents of the DEA.