**In re PUERTO RICO ELECTRIC POWER AUTHORITY, Petitioner.**

No. 82–1257.

United States Court of Appeals,
First Circuit.

Argued April 8, 1982.
Decided Aug. 11, 1982.

K. Robert Conrad, Philadelphia, Pa., with whom Nancy J. Gellman, Alexander Kerr, Robert A. Prentice, Hunt, Kerr, Bloom, Hitchner, O'Brien & Conrad, Philadelphia, Pa., and Luis A. Lugo, Jr., Hato Rey, P. R., were on memorandum, for petitioner.

Irving Jaffe, Washington, D. C., with whom Pettit & Martin, Washington, D. C., Ronald A. Cohan, Los Angeles, Cal., Jay A. Garcia-Gregory, and Fiddler, Gonzalez & Rodriguez, San Juan, P. R., were on memorandum, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The Puerto Rico Electric Power Authority ("PREPA") petitions for an extraordinary writ in the nature of mandamus, 28 U.S.C. § 1651, to set aside three unrelated orders of the United States District Court for the District of Puerto Rico. These or-

ders were made at preliminary stages in an action brought by Mitsui & Co. (U. S. A.) ("Mitsui") against PREPA for breach of contract and tort in connection with Mitsui's construction of a fossil-fueled power plant in Aguirre, Puerto Rico, under bid from PREPA. Jurisdiction in the district court case is founded on diversity of citizenship.

The district court orders from which PREPA seeks relief by way of mandamus are (1) an order requiring PREPA to comply with a Mitsui discovery request made pursuant to Fed.R.Civ.P. 30(b)(6); (2) the granting of Mitsui's motion for summary judgment on the issue of Mitsui's standing to bring this case as a real party in interest; and (3) an order requiring PREPA to translate (or pay Mitsui the costs of translating) all Spanish language documents produced by PREPA in the course of pretrial discovery. We deal with each of these matters in turn.

*Rule 30(b)(6)*

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:

A party may in his notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

On July 10, 1981, Mitsui served upon PREPA a detailed notice of deposition pursuant to this rule. Shortly thereafter, PREPA moved for a protective order claiming that the request was duplicative of prior discovery and overly burdensome. Mitsui then moved for sanctions to compel discovery. After argument, the district court issued an order and opinion on November 16, 1981, in which it granted Mitsui's motion to compel discovery and awarded Mitsui costs and attorneys' fees on its motion under Fed.R.Civ.P. 37. PREPA then filed a motion for reconsideration which was denied on February 11, 1982, with an opinion clarifying the prior order. PREPA's petition for mandamus to this court followed.

PREPA acknowledges that it has a heavy burden to justify mandamus against a discovery order of this sort. It has to demonstrate that the district court exceeded its jurisdictional authority to such a degree that its actions amounted to a "usurpation of power." *DeBeers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945). PREPA attempts to meet this burden by characterizing the discovery request as so burdensome as to be impossible of fulfillment, by pointing to statements of opposing counsel in the record which seem to suggest that Mitsui expects to "bind" PREPA in some conclusive manner through these Rule 30(b) depositions, and by alleging that there is no legal authority under Rule 30(b) for the district court's approval of Mitsui's request that PREPA's designated officials bring to their depositions certain documents relevant to their testimony. This rhetoric, however, falls well short of demonstrating a case for mandamus.

The relief granted Mitsui remains subject to the further jurisdiction of the district court. In a February 11, 1982 opinion clarifying its earlier order, the court emphasized that PREPA is free to move for such protective orders as PREPA thinks are necessary to shelter privileged and other materials. We thus have no reason to anticipate the future abuses which PREPA conjures up.

Nor are we moved by PREPA's alleged concern over being "bound" conclusively by its officials' depositions under Rule 30(b)(6). To the extent a designated official having authority may make a binding admission,

this is part of the normal risk of litigation; to the extent PREPA construes or misconstrues Rule 30(b)(6) as leading to more horrendous results, the actual effects can be considered and if need be ameliorated on appeal. With respect to requiring persons deposed under Rule 30(b)(6) to bring documents to their deposition, this is scarcely so unreasonable a practice, *see* Rule 30(b)(5), as to constitute the kind of usurpation of authority by the court which might serve as a ground for review by mandamus. While we do not now pass on the rights and wrongs of the matter, it clearly does not justify issuance of an extraordinary writ.

■ In sum, regarding the district court's Rule 30(b)(6) order, "the most that could be claimed is that the district court[ ] [has] erred in ruling on matters within [its] jurisdiction." *Parr v. United States*, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956); *In re Ellsberg*, 446 F.2d 954, 956 (1st Cir. 1971). Such errors are not, for reasons of judicial economy and the avoidance of delay and confusion in the conduct of discovery, normally occasions for issuance of mandamus, and we see no reason to make an exception to this well-settled rule here. We accordingly deny PREPA's petition as it relates to Mitsui's Rule 30(b)(6) request.

### Summary Judgment

PREPA next challenges what it alleges to be an erroneous decision of the district court granting Mitsui's request for summary judgment on the issue of Mitsui's standing as a proper plaintiff to bring this action. PREPA asserts that the court erred in ruling that there were no material issues of fact in dispute, in failing to certify a question of Puerto Rico law to the Supreme Court of Puerto Rico, and, ultimately, in resolving the merits of the legal question of standing in favor of Mitsui rather than PREPA.

■ To decide whether or not PREPA has stated a case requiring the extraordinary remedy of mandamus, we need not delve fully into the complexities of the district court's opinion. Even if the district court erred in determining there were no issues

of material fact and in resolving a legal question adversely to PREPA (issues upon which we express no present opinion), these errors would not justify interlocutory review by way of mandamus. The hardship that might ordinarily be expected to result from delay in reviewing such legal issues is insufficient reason to violate the strong policy against piecemeal appellate review. *United States v. Kane*, 646 F.2d 4, 9 (1st Cir. 1981). These issues will eventually be subject to appellate review after completion of a trial and entry of judgment. We conclude that the exceptional circumstances needed to justify mandamus have not been shown.

■ Turning to whether the district court should have certified the question of Puerto Rico law to the Supreme Court of Puerto Rico, we note that the Supreme Court has approved certification in diversity cases in order to "save time, energy, and resources" and to "help[ ] build a cooperative federalism." *Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). *See also Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970). The Supreme Court has indicated, however, that the decision to certify is best left to "the sound discretion of the federal court." *Lehman Brothers v. Schein*, 416 U.S. at 391, 94 S.Ct. at 1744. Thus while, as a general matter, we would encourage certification of close, important, undecided state law questions, we are unable to say on this record that the district court, in declining to certify, has so clearly abused its discretion as to warrant our compelling it to do so by issuance of the extraordinary remedy of mandamus. The district court is closer than we are to the local law and is also better able to weigh such possible adverse factors flowing from certification as delay, expense and so forth. *See* 1A (Part 2) *Moore's Federal Practice* ¶ 203[5]. The petition for mandamus to compel certification is accordingly denied.

### The Translation Order

PREPA's third ground for seeking mandamus is considerably stronger. The chal-

lenged order—that PREPA translate, or pay for translating, into English all Spanish documents produced by it in discovery, for the benefit of Mitsui's American counsel—involves a novel construction of Fed.R. Civ.P. 34(a) for which scant authority is evident. Moreover, in issuing this and a related order, the court has imposed significant pretrial burdens of an unusual nature. Before addressing the merits of this matter, we describe the background of the translation controversy.

After Mitsui had filed its action against PREPA in November 1976, PREPA commenced discovery, including requests for relevant documents from Mitsui and various Japanese companies (among whom was Mitsui & Co. (Tokyo)—Mitsui's parent corporation) involved in the Aguirre project. Upon receipt of these, many of which were written in Japanese, PREPA realized that it had a translation problem. Lacking ready resources to translate the documents, PREPA moved in the district court on February 9, 1978, to compel Mitsui "to provide an English translation for each discoverable document written in Japanese or, in the alternative, to reimburse [PREPA] for the expenses incurred in having the Japanese documents ... translated into English...."

On June 20, 1978, the magistrate issued an order granting PREPA's motion. His order was affirmed by the district court in an opinion construing Fed.R.Civ.P. 34(a) to require translation. The court indicated some doubt on the legal authority for its order, however, by certifying the issue to this court pursuant to 28 U.S.C. § 1292(b). Mitsui then appealed the district court's order both directly under 28 U.S.C. § 1291 and under § 1292(b). In the alternative, it petitioned this court for mandamus to set aside the translation order. In three brief orders issued on September 7, 1978, this court dismissed both appeals under section 1291 and section 1292(b). On the petition for mandamus, we stated that Mitsui had "failed to convince us that [its] right to

issuance of the writ is 'clear and indisputable.'" (Citations omitted.) We accordingly declined to issue the writ. Mitsui thereupon complied with the district court's order, translating the documents at a cost to it said to amount to $250,000.

On November 22, 1978, Mitsui moved to have PREPA either translate into English or pay the costs of translating the Spanish language documents PREPA had produced for Mitsui during discovery. The magistrate granted this motion on October 26, 1979, a decision which the district court affirmed on February 19, 1980. After negotiation, Mitsui agreed to let PREPA submit summaries of documents which PREPA felt were irrelevant to the case; PREPA then began to comply with the order. It ceased its efforts, however, when it realized that its attempts to summarize irrelevant documents were proving as expensive as full translations. When it became clear that PREPA had ceased translating, Mitsui began its own effort—submitting its translation bills to PREPA. PREPA refused to pay these invoices, and Mitsui moved on November 21, 1981, for sanctions. The district court responded to this motion on February 11, 1982, with an opinion that threatened sanctions under Rule 37 should PREPA continue to ignore the district court's long-standing order. PREPA then brought this petition for mandamus.

In its petition PREPA attempts to distinguish the district court's Spanish translation order, which it characterizes as a "clear abuse of discretion," from the earlier Japanese order, which it defended before this court in 1978 as being a sound exercise of district court authority. PREPA points out that this is a diversity case and that, had the action been tried in the Commonwealth courts of Puerto Rico, the entire case would have been conducted in Spanish, the national language of Puerto Rico and its courts. PREPA further asserts that orders requiring English translations of Spanish documents at the discovery stage [1] of all federal

---

1. PREPA does not challenge the district court's authority to require translations of documents

actually used in the court proceedings. The district court's Local Rule 6 A provides that

district court proceedings in Puerto Rico would place an intolerable burden on Puerto Rico citizens and companies sued in the federal district court by parties from outside the Commonwealth. Such orders would require Puerto Rico defendants to pay substantial amounts in prelitigation translation expenses which might not be required of their English-speaking opponents. PREPA concludes that, since the federal court in a diversity case is sitting, in effect, as a quasi-Commonwealth court, and since Mitsui has voluntarily chosen to do business in Spanish-speaking Puerto Rico, Mitsui should bear its own costs of translation of Spanish documents just as it would be required to do in a Commonwealth court.

■ We agree with PREPA that because Spanish is the native language of Puerto Rico, the order requiring PREPA to translate its Spanish documents is especially vulnerable. However, the Japanese and the Spanish translation orders share an even more fundamental defect. In our opinion, the Federal Rules do not confer upon the district court the power to have issued either. It is now clear to us—as it was not in 1978 when we refused to take jurisdiction to review the Japanese order—that Rule 34 contains no basis for orders such as have been issued here, and that, moreover, such orders violate the well-accepted principle that each party bear the ordinary burden of financing his own suit. Additionally, the orders have come to assume such importance in this case that justice requires us to deal with them now rather than later. We have stated that, in rare cases involving "new and important questions of law," *United States v. Sorren*, 605 F.2d 1211, 1216 (1st Cir. 1979), we will issue a writ of mandamus in order to properly exercise "supervisory control over the district courts." *In re Ellsberg*, 446 F.2d 954, 956 (1st Cir. 1971). *See Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957). We

think the present case, involving as it does a rule which has required the expenditure of hundreds of thousands of dollars in prelitigation expenses and which, we now see, arguably threatens to upset the balance of prelitigation burdens applied to Puerto Rican and other parties, presents a proper case for the rare exercise of this extraordinary power of review.

■ There is virtually no authority on the question of a district court's power to order a party producing documents in discovery to pay—at the pretrial stage—the costs of translating the documents from one language to another for the benefit of the requesting party. While translation and interpreting expenses may ultimately be recovered by a prevailing party as an item of cost at the end of a case, *see* 10 Wright & Miller, *Federal Practice & Procedure* § 2677 at 217 n.84, only a single district court (in addition to the district court here) appears to have approved the practice of requiring payment of translation expenses at the pretrial stage. *See Stapleton v. Kawasaki Industries, Ltd.*, 69 F.R.D. 489 (N.D.Ga.1975). In *Stapleton*, an American citizen sued a Japanese motorcycle manufacturer alleging defects in a motorcycle's design. At plaintiff's request, the court ordered Kawasaki to produce documents dealing with the manufacturing specifications of the Kawasaki cycle. The company complied, but its documents were in Japanese and the plaintiff had to spend some $420 for their translation. The plaintiff then moved, under Fed.R.Civ.P. 37(b)(2), to be reimbursed for the reasonable expense of the translation. Rule 37(b) grants district courts broad authority to impose sanctions on parties who do not comply with "an order to provide or permit discovery" at the pretrial stage. Included in this authority is the power to "require the party failing to obey . . . to pay the reasonable expenses . . . caused by the failure. . . ." Fed.R.Civ.P. 37(b)(2). There is no indication in the district court's

---

"[a]ll documents not in the English language which are presented to or filed in this Court . . . shall be accompanied . . . by an English translation. . . ." Such translations must be

certified by the court interpreter unless such certification is waived by stipulation of the parties.

opinion in *Stapleton* that the court had earlier expressly ordered the Japanese company to produce its documents in English. Nevertheless, reimbursement was ordered. The principal rationale of the court seemed to be that Japanese companies "[i]n return for the privilege given ... to sell their products here and ... the protection of this country's laws ... should consider the cost of translating these documents as a reasonable cost of transacting business in this country." *Id.* at 489. The court cited neither precedent nor any provision of the Federal Rules of Civil Procedure (other than Rule 37) to support its holding.

In the present case, the district court found authority for upholding the translation orders issued by the magistrate in Fed. R.Civ.P. 34(a). Rule 34(a), respecting production of documents, reads as follows:

(a) Scope. Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents (*including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form* ), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served; or (2) to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b).

(Emphasis added.) Focusing upon the language italicized above (which was added by Congress in 1970), the district court analogized documents in a strange foreign language to "data compilations" produced by "detection devices." Since both data compilations and foreign language documents

may be incomprehensible to a party without further processing, both may be ordered to be produced, reasoned the court, in a "reasonably usable form" to facilitate the discovery process. In the case of documents, this means that they must be translated into English.

We disagree with the court's reading of Rule 34 and with the analogy it drew. But before stating our own interpretation, we think it important to consider how the Federal Rules generally allocate the burdens of expense in pretrial discovery. It is generally assumed, as the Supreme Court stated in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) that each party is to bear the "ordinary burden of financing his own suit." *Id.* at 179, 94 S.Ct. at 2153. While the prevailing party is permitted in the court's discretion to recover certain enumerated costs necessary to preparation and presentation of his case, this allocation only occurs after the suit is over. Fed.R.Civ.P. 54(d). *See* 28 U.S.C. § 1920 (listing appropriate items of cost).

It follows that each party seeking discovery is expected to bear any special attendant costs. To be sure, the respondent is expected to accept the initial expense of producing its own documents, answering interrogatories, and submitting to depositions. But if the discovery requests threaten to impose "undue burden or expense" upon a respondent, the district courts are specifically empowered to enter protective orders conditioning the request or requiring the requesting party to pay the expenses of production. *See* Fed.R.Civ.P. 26(c). Such orders are commonly entered, at the discretion of the district court, where the deposition of a party-opponent is to be taken at some great distance from his home, *see* 4 *Moore's Federal Practice* ¶ 26.77 at 26–552; 8 Wright & Miller, *Federal Practice & Procedure* § 2112 at 407 n.87; *id.* § 2309 at 284 n.73, or where demands for production of documents impose identifiable expenses and burdens on the producing party. *E.g., Celanese Corp. v. E. I. duPont de Nemours & Co.,* 58 F.R.D. 606, 16 Fed.R.Serv.2d 1531

(D.Del.1973) (request to non-party); *Currie v. Moore-McCormack Lines, Inc.*, 23 F.R.D. 660 (D.Mass.1959); 8 Wright & Miller, *Federal Practice & Procedure* § 2038 at 277 n.55. *See generally* Fed.R.Civ.P. 26(c)(2) (granting to district courts the authority to regulate the "terms and conditions" of discovery). In addition, where interrogatories are concerned, Congress has provided that the *requesting* party must bear the initial cost of sifting through voluminous documents to get an answer to a question where the documents are certain to contain the answer and where "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served. . . ." Fed.R.Civ.P. 33(c). In such a situation, the party served must simply specify the records from which the answer may be derived and afford the other party a reasonable opportunity to examine and copy records. *Id.* Both Rule 26's provision for protective orders, and Rule 33's imposition of costs on the requesting party when both parties have equal access to documents containing the answers to interrogatories, underscore the assumption implicit in the Federal Rules that parties must normally finance their own lawsuits.

The 1970 amendment to Rule 34 providing that the respondent shall produce data compilations "translated, if necessary, by the respondent through detection devices into reasonably usable form" does nothing to disturb this basic assumption. The Advisory Committee on Rules described the purpose of the amendment in its commentary on Rule 34(a) as follows:

> Rule 34 applies to electronic data compilations from which information can be obtained only with the use of detection devices, and . . . when the data can as a practical matter be made usable . . . only through respondent's devices, respondent may be required to use his devices to translate the data into usable form.

48 F.R.D. 457, 527 (1969).

Congress thus had in mind computerized data or the like which could be presented *only* by use of a machine ("detection device") which respondent alone controlled. In such situations, the data would be valueless unless respondent cooperated in rendering it intelligible. Nothing in the Advisory Committee's comments suggests that the amended Rule 34 was intended to apply outside the specialized situation described, nor do they suggest that cost shifting—rather than simply making the data available—was a purpose of the Rule. The rule speaks specifically only of "data compilations" translated through "detection devices." There is no hint of a more general principle requiring respondents to translate documents not written in the discovering party's native tongue—nor, indeed, would there be any need to so extend the rule given the general availability of translators. Japanese, after all, is spoken by millions of people, as is Spanish. Mitsui does not control the "detection device" needed to render Japanese into "usable form." Unlike a unique "detection device," therefore, which may provide the only means of rendering a particular data base comprehensible, language translation services are generally available in the modern world to a party seeking discovery. Interpreters and translators may be hired in any large city and may be available at many universities. This is as true of Japanese as it is of Spanish, as several cases where Japanese translations have been required appear to demonstrate. *See Zenith Radio Corp. v. Matsushita Electric Industries Co.*, 513 F.Supp. 1100, 1132 & n.35 (E.D.Pa.1981); *Stapleton v. Kawasaki Industries Ltd.*, 69 F.R.D. 489 (N.D.Ga.1975). While in *Stapleton* the court ordered reimbursement of translation expenses, there is no suggestion that the plaintiff in that case was unable to *find a translator.* Thus, in most, if not all, cases translators would be available to *both* parties—a situation which suggests that the requesting party should do the translating. *Cf.* Fed.R.Civ.P. 33(c) (discussed *supra*). Certainly in the present case, where both parties are large corporations, we have no doubt that translators could be found to do

the necessary work without imposing this task or its expense on the opposing party.[2]

In addition, the commentary on Rule 34 negates any argument, even as to data compilations, that Rule 34 was meant to shift the pretrial expense of providing a "detection device" from the party seeking discovery to the respondent. The Advisory Committee on Rule 34 states:

> In many instances, this means that respondent will have to supply a print-out of computer data. The burden thus placed on respondent will vary from case to case, and the courts have ample power under Rule 26(c) *to protect respondent against undue burden or expense*, either by restricting discovery or requiring that the discovering party pay costs. Similarly, if the discovering party needs to check the electronic source itself, *the court may protect respondent* with respect to preservation of his records, confidentiality of nondiscoverable matters, *and costs*.

48 F.R.D. at 527 (emphasis added). Commentators have stated that placing even the initial burden of data translation on the responding party in this context poses a risk of reversing the usual allocation of costs in discovery. They have warned that "the courts will have to become increasingly sensitive to problems of expense and the utilization of an opponent's computer assets." 8 Wright & Miller, *Federal Practice & Procedure* § 2218 at 659. Thus, even within the narrow context of computer translations, both the drafters of Rule 34 and commentators have been careful to warn courts against upsetting the traditional cost allocation of the rules.[3]

In sum, we hold that the district court misread Rule 34 as authorizing it to require a shifting of the translation burden in the present situation where Congress intended none.

In light of the discussion above, and to avoid the unfairness inherent in allowing matters to continue without guidance, we think it appropriate to issue the requested writ of mandamus setting aside the order of the district court threatening sanctions against PREPA for its failure to obey the court's translation order. In so ruling, however, we are confronted with a problem of equity. Mitsui has already complied with a similar order of the district court based upon the same faulty legal premise as the present order. In addition, Mitsui, which

---

**2.** We are not prepared to say at this time, nor is it necessary for us to so rule in our decision here, that a court would never be justified in making an order to translate. Where one party has no resources by which to translate a key document, for example, and the producing party possesses easy access to such resources, a district court's inherent authority to regulate the "terms and conditions of discovery" and to make "just" orders requiring a party to "provide or permit discovery" may conceivably support a translation order. *See* Fed.R.Civ.P. 26(c). Even in such circumstances, however, our discussion of Rule 34(a) above suggests that the producing party should probably be entitled to reimbursement for its reasonable expenses incurred in producing the translation. *See* note 3, *supra*. We need not decide this issue today, however, since the facts of this case are by no means as extreme or urgent as the hypothetical example posited above.

**3.** This suggests, though it is not necessary to our holding in the present case, that even were Rule 34 or some other federal rule somehow construed to support a translation order respecting documents, the two orders here would impose, in the words of the Advisory Committee, "undue burdens" in the form of costs on the translating party. The cost of the Japanese translation order was $250,000. PREPA vigorously asserts that the Spanish translation order may cost much more. In such a situation, the respondent in the discovery proceeding should be entitled, at very least, to reimbursement for translation expenses.

We additionally reject the district court of Georgia's rationale that foreign parties should be routinely forced to pay for the costs of translation as a "cost of doing business" in the United States. *See Stapleton v. Kawasaki Industries, Ltd.*, 69 F.R.D. 489 (N.D.Ga.1975). Congress could perhaps impose such a rule if it so desired, but the present Federal Rules provide no authority for such an extraordinary burden on foreign parties. It must be borne in mind that discovery of the sort involved here ranges far beyond basic and highly probative documents into large quantities of documents of the most marginal significance. To empower the discovering party to force his opponent to pay for translation of such materials long before their true significance can be known is to empower one party to impose a possibly crushing economic burden on the other.

has spent some $250,000 complying with its translation order, petitioned for and was denied the same mandamus relief in 1978 which we now are disposed to grant PRE-PA. It would thus be manifestly unfair, having required Mitsui to pay for translating its own documents, to require it also to shoulder the entire expense of translating PREPA's Spanish documents. The mandamus remedy, however, rests in the "sound discretion of this court" to exercise its power of supervision over the district courts. *In re Ellsberg*, 446 F.2d at 956. We thus feel an equitable solution is appropriate to set matters straight in these unusual circumstances.

We hold, therefore, that the writ of mandamus requested by PREPA shall issue annulling the challenged Spanish translation order, *but only on condition* that PREPA first reimburse Mitsui for Mitsui's reasonable expenses incurred in translating its Japanese documents into English at PREPA's request. Mitsui's reimbursement shall be diminished by an offset equivalent to PRE-PA's reasonable expenditures to date in translating Spanish documents into English at Mitsui's behest. Should PREPA refuse to reimburse Mitsui for the Japanese translation expenses, the district court's Spanish translation order shall remain in effect and PREPA will be subject to such sanctions as the district court deems appropriate pursuant to Rule 37 should PREPA nevertheless continue to disobey the court's order and refuse to translate or pay for the translation of its Spanish documents. Should PREPA elect to reimburse Mitsui, but the parties fail to agree as to the amounts, the district court shall determine the amounts and all other unsettled details. Whichever party ultimately prevails will at the conclusion of the case be free to apply to district court for reimbursement of its translation expenses as "costs" under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920.

*So ordered.*