**BRIESE LICHTTECHNIK VERTRIEBS GMBH and Hans–Werner Briese, Plaintiffs,**

v.

**Brent LANGTON, B2Pro, Key Lighting, Inc. and Sergio Ortiz, Defendants.**

No. 09 Civ. 9790(LTS)(MHD).

United States District Court, S.D. New York.

Jan. 24, 2011.

Amir Reza Ghavi, Mary Veronica Mullally, Gary Serbin, Hogan Lovells US LLP, New York, NY, for plaintiffs.

Edward Charles Schewe, Manhattan Beach, CA, Edward P. Kelly, New York, NY, for defendants.

## MEMORANDUM & ORDER

MICHAEL H. DOLINGER, United States Magistrate Judge.

Defendants have moved in two phases for relief under Fed.R.Civ.P. 37. They contend that plaintiffs have failed to meet their discovery obligations in a number of respects, and as a result they seek an order compelling additional disclosures and an award of the expenses of their motions. In their initial motion, they assert that plaintiffs should be ordered to produce otherwise privileged documents listed on their privilege log concerning the patent prosecution, a demand that is

based on a purported waiver of the privilege. They further argue that plaintiffs should be compelled to produce other relevant documents not yet made available to defendants, that some documents produced in redacted form should be unredacted, and that plaintiffs' privilege log is inadequate and should be supplemented. In a supplemental motion they further argue that a preclusion order should be entered based on the assertedly inadequate testimony of plaintiffs' two Rule 30(b)(6) witnesses, and they complain about the failure of plaintiffs to identify or produce the documents that their Rule 30(b)(6) witnesses reviewed in preparation for their testimony.

Plaintiffs oppose both versions of the motion. With respect to the first application, they contend that it should be denied based on defendants' failure to meet and confer with them before and after filing the motion, that they have not waived their attorney-client privilege and work-product immunity, and that their privilege log is compliant with governing requirements. As for the second installment, plaintiffs assert that the 30(b)(6) witnesses provided sufficient testimony about the pertinent topics, that they have produced all of the documents that those witnesses reviewed, and that defendants fail to satisfy the requirements of Fed.R.Civ.P. 26(b)(3) and Fed.R.Evid. 612 that would trigger identification of the documents reviewed by the deposition witnesses.

For the reasons that follow, defendants' applications are granted in part and denied in part.[1]

### I. *The Initial Motion*

### A. *The Privilege Waiver Issue (Request 35)*

■ On August 17, 2010 plaintiffs' counsel produced to defendants' attorney approximately 118 pages of documents. (Decl. of Amir Ghavi, Esq. in Support of Pls.' Opp'n to Defs.' Mot. to Compel and for Sanctions ("Ghavi Decl.") ¶ 11 & Ex. E, Sept. 28, 2010). Two weeks later one of plaintiffs' attorney discovered that they had inadvertently included in this production 14 pages of documents protected by the attorney-client privilege and/or work-product immunity. (Ghavi Decl. ¶ 12 & Ex. F). As a result, he sent a letter to defendants' attorney the same day, identifying the protected documents (Bates ## BH008142–44, BH008159, BH008186–89, BH008204–06 and BH008244–46), and requesting, based on paragraph 10 of the governing protective order, their immediate return and the destruction of any copies. (*Id.*). The next day, plaintiffs' former patent attorneys—the firm of Vidas Arrett & Steinkraus—who had produced documents to defendants pursuant to subpoena on or about August 31, requested the return of five pages because they too were protected by the attorney-client privilege or the work-product rule. (Ghavi Decl. ¶ 17 & Exs. J & K).

We understand that defendants have taken no action in response to these requests. Instead, in their September 20, 2010 motion, they assert that the production of the cited documents by or on behalf of plaintiffs should be deemed to waive the privilege and work-product immunity for all documents pertaining to the subject covered by the privileged materials, which is the prosecution of plaintiffs' patent application.[2] This argument, particularly as characterized in defendants' opening papers, is not only meritless but entirely disingenuous.

In support of defendants' argument, they assert that waiver will be found "if the holder

---

1. Insofar as plaintiffs seek denial of the first motion for failure to meet and confer, we note that defendants claim that they in fact did undertake discussions with plaintiffs' counsel about their discovery disputes. (Reply in Support of Defs.' Mot. to Compel and for Sanctions ("Defs.' Reply"), 1, Oct. 4, 2010). Rather than undertake a factual inquiry about this issue, we direct ourselves to the merits of these disputes, which appear not to be amenable to disposition by negotiation between these feisty parties in any event.

2. The pertinent document request is # 35, which seeks "all communications concerning the prosecution of the patent-in-suit in the U.S. Patent Office." Plaintiffs listed on their privilege log a number of documents within the scope of this category that they deemed to be covered by the attorney-client privilege and/or the work-product rule but did not list the cited documents.

of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication." (Mem. in Support of Defs.' Mot. to Compel and for Sanctions ("Defs.' Mem."), 4 (citing *Bowne of New York, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 478–79 (S.D.N.Y.1993)), Sept. 20, 2010). They then seek to define a waiver based on the "waiver by assertion" theory, stating that "[p]laintiffs put the communications between their counsel at issue. They directly rely on those communications in response to Request No. 35. Thus, their waiver should be found to be a subject matter waiver." (*See* Defs.' Mem., 4–5). Alternatively, they seem to be arguing for application of a fairness theory of waiver based on partial disclosure, contending that "[p]laintiffs made a partial production … and through their counsel waived any privilege … Plaintiffs chose to disclose counsel's communications about the prosecution of the patent-in-suit for tactical reasons because of the serious inequitable conduct evidence. But, a party cannot use the shield of privilege to disable a defendant." (*Id.* at 4).

In defendants' initial briefing, they never explicitly refer to the fact that plaintiffs had sought the return of the very documents that they claim that plaintiffs deliberately disclosed for tactical purposes. This omission, apart from being blatantly misleading and unprofessional, is telling. Since plaintiffs were demanding the return of the documents, they were obviously not seeking to use them in the lawsuit, whether for a proper or a nefarious purpose. Hence neither of defendants' theories of waiver has any basis.

Plaintiffs are not using the privilege as a forbidden shield and sword since defendants point to no evidence that—apart from the inadvertently disclosed documents—plaintiffs have revealed any part of a privileged communication while seeking to withhold the balance of that communication or other related privileged communications or that plaintiffs' disclosure of the privileged documents was in any sense a deliberate stratagem to gain a tactical advantage. *See, e.g., In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 468–69 (S.D.N.Y.1996); *Bowne*, 150 F.R.D. at 484. Plaintiffs have also not waived the privilege

"by assertion" since they have not asserted a claim or defense premised on the advice of counsel. *See generally In re County of Erie*, 546 F.3d 222, 228–29 (2d Cir.2008); *United States v. Bilzerian*, 926 F.2d 1285, 1291–93 (2d Cir.1991).

Insofar as defendants offer any argument to avoid this result, they focus on what they claim is the untimeliness of plaintiffs' request for return of the documents (Defs.' Mem., 5), an argument that, if valid, would only affect the defendants' obligation to return the inadvertently produced documents, but would certainly not justify a finding of a broader waiver on any of the theories cited by defendants. In any event, the timeliness argument is meritless. The protective order provides that the producing party must give notice within five business days of "discovery" of the erroneous production. (Stipulated Protective Order ¶ 10, Mar. 2, 2010). Plaintiffs' counsel complied with this requirement since they discovered the error within fourteen days of production and provided notice the same day. (Ghavi Decl. ¶ 12 & Ex. F). Moreover, there is no evidence that the passage of two weeks between production and discovery unfairly prejudiced defendants in any way.

Finally, we note that Fed.R.Evid. 502 and Fed.R.Civ.P. 26(b)(5)(B) reinforce the protection that extends to privileged documents produced inadvertently. Rule 502(b) specifies that production of a privileged document does not constitute a waiver of the privilege if the production was "inadvertent," the privilege holder "took reasonable steps to prevent disclosure," and the privilege holder complied with Rule 26(b)(5)(B). That rule in turn provides that if the producing party has a privilege claim affecting a produced document, that party may notify the recipient, who is then obliged to "promptly return, sequester or destroy the specified information and any copies" and is prohibited from using or disclosing the information until a court resolution, which would be triggered by the discovering party applying to the court for a determination of the privilege claim.

As these provisions make plain, the steps taken by plaintiffs to retrieve the documents in question comply with the cited rules as

well as with the Stipulated Protective Order. Moreover, defendants have not even sought, under Rule 26(b)(5)(B), to challenge the privilege claim of the plaintiffs, choosing instead to seek a subject-matter waiver based on the implicit contention that the produced documents were privileged. Hence there can be no waiver implied under the circumstances.

In sum, there is no basis for compelling the production by plaintiffs of other privileged documents concerning communications about the prosecution of the patent in question.[3]

**B. The Prior–Art–Search Documents (Requests 36, 37, 41)**

Defendants next complain about plaintiffs' responses to Requests 36, 37 and 41, which seek, respectively, documents pertaining to plaintiffs' prior-art search, documents identifying who conducted such a prior-art search and its date, and documents reflecting communications between the inventor and counsel concerning the prior-art search. (Defs.' Mem., 6–8). Plaintiffs do not respond to this aspect of defendants' motion, and hence we grant defendants the following relief:

1. If plaintiffs have produced all non-privileged documents in their custody and control pertaining to any prior-art search or no such documents exist, they are to provide to defendants an affidavit or declaration so attesting and identifying any such produced documents by Bates numbers.

2. If plaintiffs have not produced all such documents to defendants, they are to do so.

3. With respect to responsive documents that plaintiffs contend are privileged, they are to confirm in writing that they have included all such documents on their privilege logs and are to identify the documents in question unless the logs already specify which documents pertain to any prior-art search.

4. The foregoing steps are to be accomplished within seven days.

**C. The Reference to a Potential Infringer (Request 43)**

In defendants' request 43, they cite to a previously produced document (numbered BH000134), which refers to the possible existence of an unidentified infringer (presumably not the defendants), and they ask for production of documents concerning the identification of that suspected infringer, as well as the circumstances surrounding the discovery of that infringer. In defendants' motion they complain that plaintiffs have not produced the requested documents. (Defs.' Mem. at 9–10). Plaintiffs do not respond to this aspect of the motion, although we understand from later filed papers on defendants' supplemental motion that plaintiff Hans–Werner Briese was questioned about this matter at his deposition and disclaimed any knowledge of such a suspected infringer. (Defs.' Supp. Mem. in Support of Defs.' Mot. to Compel and for Sanctions ("Defs.' Supp. Mem.") Ex. 19, 188–89, Nov. 15, 2010). In any event, since plaintiffs failed to respond on this topic in their motion papers, we direct the following:

1. If plaintiffs have produced all non-privileged documents in their custody and control pertaining to the discovery of a suspected infringer other than defendants, or if no such documents exist, they are to provide to defendants an affidavit or declaration so attesting and identifying any such produced documents by Bates numbers.

---

**3.** We note that plaintiffs have not explicitly sought a court order directing that defendants return the inadvertently produced documents. Such relief is available if the court finds that the producing party made reasonable efforts to screen out privileged documents and did not intend to produce those that were assertedly produced inadvertently. Fed.R.Civ.P. 26(b)(5)(B); see also Fuller v. Interview, Inc., 2009 WL 3241542, *3–5 (S.D.N.Y. Sept. 30, 2009); Synergetics USA, Inc., v. Alcon Labs., Inc., 2009 WL 2016795, *1–2 (S.D.N.Y. July 9, 2009). The rec-

ord adequately supports such a finding since (1) both sides seem to agree that the documents at issue satisfy the standards for the privilege, (2) the plaintiffs' attorneys employed a facially adequate screening process undertaken by one of their trial counsel in Germany, and (3) the handful of privileged documents that were produced were part of a large production, which currently totals more than 8,000 pages. (See Ghavi Decl. ¶¶ 6, 8, 10–12 & Ex. F; Pls.' Opp'n to Defs.' Mot. to Compel and for Sanctions ("Pls.' Opp'n"), 3–5, Sept. 28, 2010).

2. If plaintiffs have not produced all such documents to defendants, they are to do so.

3. With respect to responsive documents that plaintiffs contend are privileged, they are to confirm in writing that they have included all such documents on their privilege logs and are to identify the documents in question unless the logs already specify which documents pertain to the discovery of a suspected infringer other than defendants.

4. The foregoing steps are to be accomplished within seven days.

### D. *Computation of Damages (Request 44)*

■ Defendants sought production in their Request 44 of all documents pertaining to plaintiffs' calculation of damages, including lost profits. They complain principally that plaintiffs produced only a German language summary of sales in the United States and some redacted invoices, but failed to produce any documents pertaining, *inter alia*, to costs, that they improperly redacted the invoices and that they failed to provide translations of the German documents. For relief they seek an order limiting the plaintiffs' proof at trial on damages to the documents that they provided. (Defs.' Mem., 11–12). Plaintiffs respond by arguing that they have provided sufficient information to calculate plaintiffs' profits, that the cost documents are sensitive and unnecessary, that they have no obligation to translate foreign-language documents, and that they may choose, after seeing defendants' pertinent documents (presumably their financial documents) to seek a measure of damages based on something other than their own lost profits (we assume an award of defendants' infringing profits). (Pls.' Opp'n, 12–13).

It appears that plaintiffs have produced a substantial quantity of invoices and a summary of sales from 2006 to 2010, and represent that they have no others. (Pls.' Opp'n, 12 (citing Ghavi Decl. ¶ 18 (referring to Ex. L (enclosing more than 7,000 pages of documents)))). They offer no justification, however, for their failure to produce cost documents other than their counsel's conclusory assertion that the price of components and the identity of component suppliers is "highly [ ] sensitive." (*Id.* at 13). This bare assertion is of course inadequate to justify withholding documents pertinent to the measurement of lost profits, as is their argument that they have produced documents "sufficient to support" their claim for monetary damages. (*Id.* at 12). As a backup point, plaintiffs imply that they may choose not to pursue such lost profits, but they do not commit to such a course. (*Id.* at 12–13).

■ Under the circumstances, defendants' request for an order precluding plaintiffs from using any damages documents not produced during discovery is entirely appropriate.[4] As for the redacted invoices, plaintiffs appear to say that the redactions were solely of customers' identities (*see* Ghavi Decl. ¶¶ 20–21 & Exs. N & O; Pls.' Opp'n, 15), which is a permissible step in a case against a competitor, unless the defendants can make a showing of need, in which case production on an "Attorney's Eyes Only" basis might be appropriate. In this case, however, defendants make no such showing.

In sum, plaintiffs will be precluded from using any documents to prove lost profits that they have not already provided to defendants, but defendants' other complaints about this aspect of document production are rejected.

---

4. We also note that for discovery purposes plaintiffs have no obligation to provide translations of the German language documents. *See, e.g., In re Puerto Rico Elec. Power Auth.,* 687 F.2d 501, 506 (1st Cir.1982) (finding that, in general, barring "extreme or urgent" circumstances, the principle that each party must bear the ordinary costs of litigation requires that parties pay for any translations of discovery documents that they request); *E & J Gallo Winery v. Cantine Rallo, S.p.A.,* 2006 WL 3251830, *5 (E.D.Cal. Nov. 8, 2006) (explaining that "[n]ormally, in responding to a request for production of documents, the requesting party would bear the cost of translating documents written in a foreign language"); *Contretas v. Isuzu Motors, Ltd.,* 1999 WL 33290667, *1 (W.D.Tex. Apr. 2, 1999) (discussing the "well-accepted principle" that "each party had to pay for the translations they wanted"). If the documents were to be used by plaintiffs at trial, presumably they would have to provide a translation.

### E. *Plaintiffs' Privilege Logs*

■ Defendants also complain that the privilege logs served by plaintiffs are inadequately detailed and that they should not have been designated as highly confidential. (Defs.' Mem., 12–13). The short answer to the first contention is that the logs are in fact compliant with the requirements of the local rules and caselaw. *See* S.D.N.Y. Civil Rule 26.2; *see also United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996) (quoting *Bowne*, 150 F.R.D. at 474). As for the designation of the log as highly confidential, plaintiffs do not explain why it is entitled to that status. We see no basis for it and therefore deem it not entitled to that protection. Plaintiffs may, if they have a reasonable and good-faith basis for it, re-designate the log as confidential or forego such a designation entirely. They are to make that decision within seven days.

### F. *Plaintiffs' Redactions Generally*

■ Defendants finally complain that the plaintiffs have promiscuously redacted documents that they have produced, including several blank pages and done so without explanation. (Defs.' Mem., 13–14). Plaintiffs respond that they have redacted only certain trade-secret information that is not relevant to the case, and that they previously apprised defendants' counsel of the reasons for the redactions. (Pls.' Opp'n, 14–15; Ghavi Decl. ¶¶ 20–21 & Ex. N & O). They go on to note that the redactions involved two types of documents: invoices, from which customer identifications were deleted, and engineering drawings from which precise tolerances and certain other data were eliminated. (Pls.' Opp'n, 15). There is no showing that either of these forms of redaction was inappropriate. As noted, the customer identifications have not been shown to be needed by defendants, and to the extent that defendants did need to ascertain which customers were located in the United States, the plaintiffs provided that geographical information. (Ghavi Decl., ¶ 21 & Ex. O). The tolerances on the engineering drawings have also not been shown to be necessary to defendants' defense, and we infer that they are sufficiently sensitive data to justify either withholding or production under an "Attorney's Eyes Only" designation, but since defendants' counsel represents defendant Ortiz for prosecution of patents (*see* Pls.' Opp'n, 15), the latter alternative appears impractical.

### II. *Defendants' Supplemental Motion*

### A. *The 30(b)(6) Depositions*

■ In defendants' supplemental papers, they complain that the two designated Rule 30(b)(6) witnesses—defendant Hans–Werner Briese and his wife, Jutta Briese—were unable to testify adequately about a host of issues. They demand that either the plaintiffs provide a more knowledgeable witness or they be precluded from proving significant portions of their case, including damages. (Defs.' Supp. Mem., 2–7).

This complaint is unjustified. These two individuals are the principal officers and participants in the business of plaintiff Briese Lichttechnik, and they were apparently extensively prepared by counsel on all pertinent 30(b)(6) topics. (Decl. of M. Veronica Mullally, Esq. in Support of Pls.' Opp'n to the Supp. Mem. in Support of Defs.' Mot. to Compel and for Sanctions ("Mullally Decl.") ¶¶ 3–5, Nov. 18, 2010). Moreover, although defendants complain that the witnesses gave useless testimony, they carefully avoid supplying more than a handful of transcript pages, despite the fact that both were deposed for a full day, indicating that, to the extent that they were asked properly phrased and permissible questions about factual details, they were able to provide responsive testimony. (*See also* Mullally Decl. Exs. T & V). Although defendants invoke a number of questions to which the witnesses responded that they did not know the answer (Defs.' Supp. Mem., 2–7 & Decl. of Edward C. Schewe, Esq. in Support of Defs.' Supp. Mem. in Support of Mot. to Compel and for Sanctions ("Schewe Supp. Decl.") Exs. 18–19, Nov. 15, 2010), most of these questions either were pitched at such a level of generality as to make it likely that the witness would not have a specific answer or called for a legal conclusion or were so poorly phrased as to be virtually incomprehensible. The failure of defendants' counsel to focus on specific purely factual details does not demonstrate that

the witnesses failed to fulfill their required roles under Rule 30(b)(6). In any event, as 30(b)(6) witnesses, Mr. and Mrs. Briese bound the defendant company by their testimony, and thus to the extent that they had no answer to specific factual inquiries, the Briese entity is bound by that profession of ignorance.

### B. *The Rule 612 Dispute*

■ When deposing the Brieses, defendants sought to have them identify all documents that they had reviewed in preparation for their depositions, but plaintiffs' counsel objected.[5] Defendants now argue that they should have been permitted to obtain an identification of those documents and their production. (Defs.' Supp. Mem., 7–10). In response, plaintiffs represent that all documents reviewed by these two witnesses in preparation for depositions have already been produced (Mullally Decl. ¶ 13), and they argue that identification of counsel's choices as to which documents to show the witnesses in her witness-preparation sessions is protected work product. (Pls.' Supp. Mem., 9–12).

In view of plaintiffs' representation that all documents reviewed by the witnesses have been produced—which amounts as well to a representation that the witnesses were not shown any otherwise privileged documents—defendants have no right to an identification of which documents the attorneys showed the witnesses. *See, e.g., Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir.1987); *Sporck v. Peil*, 759 F.2d 312, 316–18 (3d Cir.1985); *see also Primetime 24 Joint Venture v. Echostar Commc'ns Corp.*, 2000 WL 97680 *4–5 & n. 6 (S.D.N.Y. Jan.

28, 2000). As these cases have recognized, the attorney's decision to select specific documents to show the witness embodies the lawyer's mental processes, specifically, her evaluation of the significance of those documents, and hence is presumptively protected work-product. Moreover, even if we assume that a sufficient showing of need under Rule 26(b)(3) could surmount that immunity, defendants here make no such showing.[6]

### III. *Motion Expenses*

Defendants seek an award of motion expenses, including reasonable attorney's fees, presumably under Rule 37(a)(4), as well as the expenses of the Rule 30(b)(6) depositions of the Brieses. Contending that the motion is frivolous, plaintiffs seek mirror-image relief. In view of our disposition of the two versions of the motion, both applications are denied and the parties are to bear their own expenses.

### CONCLUSION

For the reasons stated, defendants' motion to compel is granted to the extent noted and otherwise denied.

---

5. In the deposition of Mr. Briese, counsel permitted him to respond to the preliminary question whether he had reviewed documents in preparing to testify but precluded him from identifying those documents. (Schewe Supp. Decl. Ex. 19, 10–11). In Mrs. Briese's deposition, counsel objected to the inquiry as to whether she had reviewed any documents. (Schewe Supp. Decl. Ex. 18, 12–13). For reasons to be noted, although the objection to the first question at the Jutta Briese deposition was inappropriate, that error is inconsequential in view of the current record.

6. The analysis would differ if the attorney had shown the witness privileged documents. Under those circumstances Rule 612 would presumably permit an inquiry by the discovering party as to whether the witness had reviewed a particular privileged document and, if so, whether that document had refreshed the witness's recollection, in which case the document would be producible notwithstanding its otherwise privileged status. *See Sporck*, 759 F.2d at 317–19; *Laborers Local 17 Health Benefit Fund v. Philip Morris, Inc.*, 1998 WL 414933, *4–5 & n. 5 (S.D.N.Y. July 23, 1998). As we have noted, however, that is not the case here.