Justice Ginsburg,
with whom Justice Breyer and Justice Sotomayor join, dissenting.
To be comprehended by the parties, the witnesses, and the court, expression in foreign languages must be translated into English. Congress therefore provided, in 28 U. S. C. § 1920(6), that the prevailing party may recoup compensation paid to “interpreters.” The word “interpreters,” the Court *576 emphasizes, commonly refers to translators of oral speech. Ante, at 566-567. But as the Court acknowledges, ante, at 567-568, and n. 2, “interpreters” is more than occasionally used to encompass those who translate written speech as well. See Webster’s Third New International Dictionary of the English Language 1182 (1976) (hereinafter Webster’s) (defining “interpreter” as “one that translates; esp: a person who translates orally for parties conversing in different tongues”); Black’s Law Dictionary 895 (9th ed. 2009) (defining “interpreter” as a “person who translates, esp. orally, from one language to another”); Ballentine’s Law Dictionary 655 (3d ed. 1969) (defining “interpreter” as “[o]ne who interprets, particularly one who interprets words written or spoken in a foreign language”).
In short, employing the word “interpreters” to include translators of written as well as oral speech, if not “the most common usage,” ante, at 568, is at least an “acceptable” usage, ibid. Moreover, the word “interpret” is generally understood to mean “to explain or tell the meaning of: translate into intelligible or familiar language or terms,” while “translate” commonly means “to turn into one’s own or an-' other language.” Webster’s 1182, 2429. See also Random House Dictionary of the English Language 744, 1505 (1973) (defining the transitive verb “interpret” as, inter alia, “to translate,” and “translate” as “to turn (something written or spoken) from one language into another”).
Notably, several Federal District Court decisions refer to translators of written documents as “interpreters.” E. g., United States v. Prado-Cervantez, No. 11-40044-11, 2011 WL 4691934, *3 (D Kan., Oct. 6, 2011) (“Standby counsel should also be prepared to arrange for interpreters to interpret or translate documents when necessary for defendant.”); Mendoza v. Ring, No. 07-3144, 2008 WL 2959848, *2 (CD Ill., July 30, 2008) (“The interpreter is also directed to translate filings by the plaintiff from Spanish to English. The original and translated versions will be docketed.”). So do *577 a number of state statutes. E. g., Cal. Govt. Code Ann. § 26806(a) (West 2008) (“[T]he clerk of the court may employ as many foreign language interpreters as may be necessary ... to translate documents intended for filing in any civil or criminal action . .. .”).
Most Federal Courts of Appeals confronted with the question have held that costs may be awarded under § 1920(6) for the translation of documents necessary to, or in preparation for, litigation. Compare 683 F. 3d 1218, 1220-1222 (CA9 2011); BDT Prods., Inc. v. Lexmark Int’l, Inc., 405 F. 3d 415, 419 (CA6 2005); Slagenweit v. Slagenweit, 63 F. 3d 719, 721 (CA8 1995) (per curiam); and Chore-Time Equip., Inc. v. Cumberland Corp., 713 F. 2d 774, 782 (CA Fed. 1983) (all holding that costs for document translation are covered by § 1920(6)), with Extra Equipamentos E Exportaȩão Ltda. v. Case Corp., 541 F. 3d 719, 727-728 (CA7 2008) (costs for document translation are not covered by §1920(6)). See also In re Puerto Rico Elec. Power Auth., 687 F. 2d 501, 506, 510 (CA1 1982) (recognizing that costs of document translation may be reimbursed, without specifying the relevant subsection of § 1920); Studiengesellschaft Kohle mbH v. Eastman Kodak Co., 713 F. 2d 128,133 (CA5 1983) (allowing document translation costs, under § 1920(4)); Quy v. Air Am., Inc., 667 F. 2d 1059, 1065 (CADC 1981) (allowing “translation costs” under § 1920(6)).[1]
In practice, federal trial courts have awarded document translation costs in cases spanning several decades. See, e.g., Raffold Process Corp. v. Castanea Paper Co., 25 F. Supp. 593, 594 (WD Pa. 1938). Before the Court Interpreters Act added § 1920(6) to the taxation of costs statute in 1978, district courts awarded costs for document translation under § 1920(4), which allowed taxation of “[f]ees for exem *578 plification and copies of papers,” 28 U. S. C. § 1920(4) (1976 ed.), or under § 1920's predecessor, 28 U. S. C. § 830 (1926 ed.). See, e. g., Bennett Chemical Co. v. Atlantic Commodities, Ltd., 24 F. R. D. 200, 204 (SDNY 1959) (§ 1920(4)); Raffold Process Corp., 25 F. Supp., at 594 (§ 830). Pre-1978, district courts also awarded costs for oral translation of witness testimony. See, e. g., Kaiser Industries Corp. v. McLouth Steel Corp., 50 F. R. D. 5, 11 (ED Mich. 1970). Nothing in the Court Interpreters Act, a measure intended to expand access to interpretation services, indicates a design to eliminate the availability of costs awards for document translation. See S. Rep. No. 95-569, p. 4 (1977) (hereinafter S. Rep.) (“The committee . .. feels the time has come to provide by statute for the provision of and access to qualified certified interpreters, for a broader spectrum of people than the present law allows.”). Post-1978, rulings awarding document translation costs under § 1920(6) indicate the courts’ understanding both that the term “interpreter” can readily encompass oral and written translation, and that Congress did not otherwise instruct.[2] I agree that context should guide the determina *579 tion whether §1920(6) is most sensibly read to encompass persons who translate documents. See ante, at 569. But the context key for me is the practice of federal courts both before and after § 1920(6)⅛ enactment.
The purpose of translation, after all, is to make relevant foreign-language communication accessible to the litigants and the court. See S. Rep., at 1 (The Court Interpreters Act is intended “to insure that all participants in our Federal courts can meaningfully take part.”). Documentary evidence in a foreign language, no less than oral statements, must be translated to equip the parties to present their case clearly and the court to decide the merits intelligently. See, e. g., United States v. Mosquera, 816 F. Supp. 168, 175 (EDNY 1993) (“For a non-English speaking [party] to stand equal with others before the court requires translation [of relevant documents].”); Lockett v. Hellenic Sea Transports, Ltd., 60 F. R. D. 469, 473 (ED Pa. 1973) (“To be understood by counsel for plaintiffs and defendant, as well as for use at trial, the [ship’s] deck log had to be translated [from Greek] into the English language.”).[3] And it is not extraordinary that what documents say, more than what witnesses testify, may make or break a case.
*580 Distinguishing written from oral translation for cost-award purposes, moreover, is an endeavor all the more dubious, for, as the Court acknowledges, ante, at 573-574, some translation tasks do not fall neatly into one category or thé other. An interpreter, for example, may be called upon to “sight translat[e]” a written document, i. e., to convey a written foreign-language document’s content orally in English. R. González, V. Vasquez, & H. Mikkelson, Fundamentals of Court Interpretation: Theory, Policy, and Practice 401 (1991) (hereinafter González). In-court sight translation, Tani-guchi concedes, counts as “interpretation,” even though it does not involve translating verbal expression. Tr. of Oral Arg. 10. Yet an interpreter’s preparation for in-court sight translation by translating a written document in advance, Taniguchi maintains, does not count as “interpretation.” Ibid. But if the interpreter then reads the prepared written translation aloud in court, that task, in Taniguchi’s view, can be charged as “interpretation,” id., at 11, even though the reading involves no translation of foreign-language expression — written or oral — at all.
Similarly hard to categorize is the common court-interpreter task of listening to a recording in a foreign language, transcribing it, then translating it into English. See González 439. Although this task involves oral foreign-language communication, it does not, Taniguchi contends, qualify as “interpretation,” because it involves “the luxury of multiple playbacks of the tape and the leisure to consult extrinsic linguistic sources.” Reply Brief 9 (internal quotation marks omitted). But sight translation — which Tani-guchi concedes may be charged as “interpretation” — may sometimes involve similarly careful linguistic analysis of a written document in advance of a court proceeding. Davis & Hewitt, Lessons in Administering Justice: What Judges Need To Know About the Requirements, Role, and Professional Responsibilities of the Court Interpreter, 1 Harv. Latino L. Rev. 121,131 (1994).
*581 Taniguchi warns that translation costs can be exorbitant and burdensome to police. Reply Brief 19-22; Tr. of Oral Arg. 20-21. The Court expresses a similar concern. Ante, at 574.[4] Current practice in awarding translation costs, however, has shown that (district judges are up to the task of confining awards to translation services necessary to present or defeat a claim. See Eastman Kodak Co., 713 F. 2d, at 133 (District Court should not award document translation costs “carte blanche,” but must determine whether such costs were necessarily incurred). See also, e.g., Conn v. Zakharov, No. 1:09 CV 0760, 2010 WL 2293133, *3 (ND Ohio, June 4, 2010) (denying translation costs where prevailing party did not demonstrate the costs were necessary); Maker’s Mark Distillery, Inc. v. Diageo North Am., Inc., No. 3-.03-CV-93, 2010 WL 2651186, *3 (WD Ky., June 30, 2010) (same); Competitive Technologies v. Fujitsu Ltd., No. C-02-1673, 2006 WL 6338914, *11 (ND Cal., Aug. 23, 2006) (same); Arboireau v. Adidas Salomon AG, No. CV-01-105, 2002 WL 31466564, *6 (D Ore., June 14, 2002) (same); Oetiker v. Jurid Werke, GmbH, 104 F. R. D. 389, 393 (DC 1982) (same); Lockett, 60 F. R. D., at 473 (awarding costs for “necessary” translations); Kaiser, 50 F. R. D., at 11-12 (same); Bennett, 24 F. R. D., at 204 (same); Raffold Process Corp., 25 F. Supp., at 594 (same). Courts of appeals, in turn, are capable of reviewing such judgments for abuse of discretion.
*582 In short, §1920(6)⅛ prescription on “interpreters” is not so clear as to leave no room for interpretation. Given the purpose served by translation and the practice prevailing in district courts, supra, at 577-578, there is no good reason to exclude from taxable costs payments for placing written words within the grasp of parties, jurors, and judges. I would therefore affirm the judgment of the Ninth Circuit.

 Translation costs, like other costs recoverable under § 1920, may be “denied or limited” if they “were unreasonably incurred or unnecessary to the case.” 10 Moore’s Federal Practice §54.101[l][b], p. 54-158 (3d ed. 2012).

 Currently, some Federal District Courts make the practice of allowing fees for translation of documents explicit in their local rules. See Rule 54-4.8 (CD Cal. 2012) (allowing “[f]ees for translation of documents . . . reasonably necessary to the preparation of the ease”); Rule 54.1(b)(7)(B) (Guam 2011) (same); Rule 54.1(c)(7) (Idaho 2011) (allowing reasonable fee if the “document translated is necessarily filed or admitted in evidence”); Rule 54.4(7) (MD Pa. 2011) (same); Rule 54.1(e)(7) (Ariz. 2012) (same); Rule 54.1(b)(4)(e) (SD Cal. 2012) (same); Rule 54.1(g)(2) (NJ 2011) (same); Rule 54-5(d) (Nev. 2011) (same); Rule 54.2(d) (NM 2012) (allowing translator’s fee if the translated document is admitted into evidence); Rule 54.1(c)(4) (SDNY 2012) (allowing reasonable fee if translated document “is used or received in evidence”); Rule 54.1(e)(4) (EDNY 2012) (same). See also Rule 54.03(F)(1)(e) (SC 2012) (allowing costs of certain document translations under §1920(4)); Rule 54.1(b)(5) (Del. 2011) (same); Rule 54(c)(3)(i) (Conn. 2011) (same); Mise. Order, Allowable Items for Taxation of Costs ¶7 (ND Fla. 2007) (allowing “fee of a competent translator of a non-English document that is filed or admitted-into evidence”); Taxation of Costs Guidelines, 11(H) (PR 2009) (allowing fees for translation of documents filed *579 or admitted into evidence), available at http://www.prd.uscourts.gov/ courtweb/pdf/taxation_of_costs_guidelines_2007_with_time_computation_ amendments.pdf (All Internet materials as visited May 17, 2012, and included in Clerk of Court’s case file.); Taxation of Costs (Mass. 2000) (allowing fees “for translation of documents . . . reasonably necessary for trial preparation”), available at http://www.mad.uscourts.gov/resources/ pdf/taxation.pdf.

 Noteworthy, other paragraphs Congress placed in § 1920 cover written documents. See 28 U. S. C. §1920(2) (2006 ed., Supp. IV) (“[f]ees for printed or electronically recorded transcripts”); §1920(3) (2006 ed.) (“[flees and disbursements for printing and witnesses”); §1920(4) (2006 ed., Supp. IV) (“[f]ees for exemplification and the costs of making copies of any [necessary] materials”). Nothing indicates that Congress intended paragraph (6), unlike paragraphs (2)-(4), to apply exclusively to oral communications.

 The Court also observes that “[t]axable costs are limited to relatively minor, incidental expenses.” Ante, at 573. The tab for unquestionably allowable costs, however, may run high. See, e. g., In re Ricoh Co., Patent Litigation, No. C 03-02289, 2012 WL 1499191, *6 (ND Cal., Apr. 26,2012) (awarding $440,000 in copying costs); Jones v. Halliburton Co., No. 4:07-cv-2719, 2011 WL 4479119, *2 (SD Tex., Sept. 26, 2011) (awarding $57,300 in fees for court-appointed expert). Translation costs, on the other hand, are not inevitably large. See Brief for Respondent 26-27, n. 12 (listing, inter alia, 21 translation costs awards of less than $13,000, of which at least 14 were less than $3,000).